DODGE (UNITED STATES v.). See Cases Nos. 14,975 and 14,976.

---

## Case No. 3,956.

### DODGE v. VAN LEAR.

[5 Cranch, C. C. 278.][1]

Circuit Court, District of Columbia. March, 1837.

STATUTE OF FRAUDS — UNSIGNED MEMORANDUM AIDED BY PAROL EVIDENCE AND LETTERS — SALE—DELIVERY.

1. A written memorandum made by the plaintiff in his day-book, not signed by either of the parties, or by any person for either of them, and proved, by oral testimony only, to have been made in the presence and with the consent of the defendant, and corroborated by the defendant's letters, not referring particularly to that memorandum, nor stating the terms and consideration of the contract, is sufficient to take the case out of the 17th section of the statute of frauds; and it is competent for the jury to connect the letters with the written entry; and the same, taken together, constitute legal and valid evidence of a written contract, in conformity with the requisitions of the statute of frauds.

2. If a contract be absolute to deliver flour on or before a particular day, the vendor will not be excused by an obstruction of the navigation of the canal.

3. It is not material whether the defendant had, or had not the flour on hand at the time of the contract.

Assumpsit, upon a contract to deliver 1000 barrels of flour; half on the 5th, and the residue on the 15th of May, 1835. On the

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

30th of March, 1835, the defendant [Matthew S. Van Lear], being concerned with others in a large flour-mill in or near Williamsport, in Maryland, and having a large quantity of flour on hand, and being in the plaintiff's warehouse in Georgetown, agreed to sell to the plaintiff [Francis Dodge] 1000 barrels of flour, of the defendant's brand, at $4.75 per barrel, to be delivered in Georgetown, half on the 20th, and half on the 30th of April, 1835. The plaintiff, in the presence and with the assent of the defendant, made the following written entry in his day-book, as a memorandum of the agreement, under date of the 30th of March, 1835: "Bought of Mr. Van Lear 1000 barrels his brand flour @ $4.75, to be delivered, half 20th April, and half by 30th; if not here then, I am to be off or not, as I please. ½ D. & Dodge." The words and figures "½ D. & Dodge" were not written until after the defendant had left the warehouse. They were understood to mean that the firm of Davidson & Dodge, consisting of one John Davidson, and the plaintiff's son, Francis Dodge, Junior, were to take upon themselves one half of the amount of the contract. It was afterwards agreed between the plaintiff and the defendant that the time of delivery of the flour should be extended to the 5th and 15th of May, 1835. Upon his return to Williamsport, the defendant wrote to the plaintiff on the 6th of April, 1835, saying that a breach in the canal would probably interrupt the navigation for a month, and render it impracticable to fulfil the contract made with the plaintiff, and requesting an extension of time for thirty days longer. He says, "If boats can be procured from above, a part of the flour, and perhaps the five hundred barrels, can be delivered in due time. But for fear that things may occur to prevent, over which I have no control, I want to know from you, by return mail, whether you will extend the time. I am anxious to live up to the contract, and have the same offer that you made, and an extended time. The canal navigation is so precarious it is out of the question to make any calculation with certainty. My brother will be down as soon as the canal opens." To this the plaintiff replied, on the 7th of April, "Yours of 6th, is received. We must extend the time for the delivery of the contract flour, but hope it will yet be here within the time; say 20th and 30th April. We shall of course claim the first which comes from your mill, and until all can be delivered; and if, in consequence of breaks in the canal, it be kept back until 5th and 15th May, we will not object; and if not here then we are to still take it or not as we please. On receipt of this, please write and inform when you expect to get it here, &c., and when the four hundred and twenty will be down. We intend to stick to the contract, (although it don't promise any profit,) if it can be placed here before too long a time; and must be liberal when the canal

will not permit its coming. Yours, Fra. Dodge. You ask for thirty days; I suppose you mean from the time you wrote." On the first of May, 1835, the plaintiff wrote to the defendant as follows: "As you have not been able to deliver the flour, (say now behind 1275 bbls.,) we must extend the time still further and until you can get it here. I sold my half of the last 1000. at 4.80, to a New York man, and he is anxious to have it delivered. We shall rely on its delivery, and in the shortest possible time. Yours, Fra. Dodge. Flour—4.90 to 5—sales." On the 7th of May, 1835, the defendant wrote to the plaintiff as follows: "Your two letters of 7th of April, and 1st of May, are before me; the former extending the time for the delivery of the flour contracted to be delivered on the 20th and 30th April to the 5th and 15th of May, as requested by me in my letter of the 5th of April, and the latter still wishing to extend the time without any limit, or, according to your construction of the contract, as long as flour remains above the contract price. Now, sir, my view of the contract is entirely at variance with that construction. I made every exertion to deliver you the 1000 bbls. of flour by the first contract on the 20th and 30th April; say 500 bbls. on the 20th, and 500 bbls. on the 30th April. But finding it impossible, from circumstances not within my control, to make good that contract, I asked, by letter of the 5th of April, for an extension of time for thirty days, say 5th and 15th May; the same things having occurred, as before, to prevent its fulfilment, I considered it null and void after that time. I never would, and I never did make a contract so entirely against myself; for if flour had fallen, you would not, of course, have given me one day after the specified time, say 5th and 15th May; and it would not have been in my power to have delivered; therefore according to your view of it it is a complete one-sided bargain, and such a one as an idiot would have made. You will perceive, by reference to my letter, that I asked for and obtained, a certain number of days, say thirty. I therefore consider myself absolved from the first part of the contract, namely, the 500 bbls. to be delivered on the 5th of May. And still consider myself bound to deliver the other 500 bbls. by the 15th, if practicable to do so. Yours, M. S. Van Lear." To this, the plaintiff replied on the 11th of May, as follows: "Yours of the 7th is received, and I am really astonished at your not being willing to deliver the 1000 bbls. of flour as contracted for. I have been very particular throughout, and in mine of the 7th, in which I gave you the extension asked for, I then restated the original bargain, that if not delivered at the time, say 5th and 15th May. I was to take or not as I pleased; and although there was no obligation, on my part, to say any more, yet I thought best to say on the 1st inst. that we would still take it, and gave the unlimited time thus stated, in doing of which I, of course, would risk a fall of price. Now, sir, I hope, upon reflection, that you will not think of refusing to comply with this contract; it will be altogether what I could not have expected from you. I am sure no one would say that you are not bound to deliver, and I must insist on its being done. It is no longer my interest to any amount, as I sold the contract for five per cent. profit; and assured the purchaser that there was no doubt of its being complied with on your part; this refusal I could not have believed possible; don't omit to deliver it. I bought it at first more to accommodate you than from any profit I expected. Yours, Fra. Dodge."

Upon the trial, the plaintiff's counsel offered to examine Francis Dodge, Jr., one of the firm of Davidson and Dodge, as a witness, and produced an instrument in writing dated the 16th of May, 1835, signed by Davidson and Dodge on one part, and Francis Dodge, (the plaintiff,) of the other part, rescinding the agreement, by which they were to take one half of the contract. The defendant objected that the witness appeared, by the memorandum, to be interested; but THE COURT overruled the objection, and he was sworn and examined.

Upon this evidence the defendant prayed the court to instruct the jury that the plaintiff could not recover, because no part of the flour was delivered at the time of the bargain; no earnest money paid, and no note or memorandum, in writing, of the bargain made and signed by the parties or their agents, as required by the 17th section of the statute of frauds and perjuries.

But THE COURT (CRANCH, Chief Judge, contra) refused to give the instruction; and at the prayer of the plaintiff's counsel, Mr. Marbury, instructed the jury, "that if they believe, from the evidence, that on the 30th of March, 1835, the defendant contracted with the plaintiff to sell to him one thousand barrels of flour at $4.75 per barrel, to be delivered, half on the 20th and the residue on the 30th of April thereafter, and that the plaintiff, in the presence of the defendant, and with the intent to reduce the terms of the said contract to writing, made an entry in his book, in the words following," (as before stated) "and read the same to the said defendant, who assented to the correctness of the said entry; and that the said defendant afterwards addressed letters to the plaintiff, signed by him, referring to the said contract;" (see the letters of the defendant to the plaintiff, of the 6th of April and 7th of May, 1835, as above recited,) "it is competent for the jury to connect the said letters with the written entry; and the same, taken together, constitute legal and valid evidence of a written contract in conformity with the requisitions of the statute of frauds."

CRANCH, Chief Judge, stated his opinion to be that the case was within the statute of frauds and perjuries. The plaintiff's memorandum in his book is not signed by any one, and the defendant's assent to it is only proved by oral testimony; so that, without the letters, the case is clearly within the statute. The letters do not contain the whole contract, nor do they refer to the written memorandum in the plaintiff's book; with which the letters cannot be connected without parol testimony. 2 Kent, Comm. 511.

THE COURT further instructed the jury, at the prayer of the plaintiff's counsel, "that if they believed, from the evidence, that the defendant, residing and carrying on the business of a miller, at Williamsport, in the state of Maryland, contracted, on the 30th of March, 1835, to sell to the plaintiff one thousand barrels of flour, at $4.75 per barrel, and to deliver the same at Georgetown, on the 20th and 30th April next thereafter; and that afterwards, at the request of the defendant, and in consequence of a breach or breaches in the canal, the plaintiff agreed to extend the time for the delivery of the said flour, to the 5th and 15th day of May next thereafter, and that the defendant neglected and refused to deliver the said flour at the said last-mentioned times, then the plaintiff is entitled to recover in this action, although the jury should believe that the navigation of the said canal was much obstructed during the spring of the year 1835, and the defendant was put to inconvenience and difficulty in executing his said contract by reason thereof."

CRANCH, Chief Judge, observed that, as the court had overruled his opinion that the evidence was not sufficient to take the case out of the statute of frauds, he concurred in the present instruction.

The defendant's counsel, Mr. R. J. Brent, then prayed the court to instruct the jury, "that if they believe, from the evidence, that the whole of the one thousand barrels of flour, or any part thereof, was (Qu.? not) on hand at the time of entering into the alleged contract, then the entire contract is void, and the plaintiff is not entitled to recover." Which instruction THE COURT refused to give. Whereupon the defendant's counsel further prayed the court to instruct the jury, "that if they believe that Davidson and Dodge were parties in the original, or any substituted, contract, then the plaintiff is not entitled to recover." Which instruction THE COURT also refused to give.

The defendant's counsel then moved the court to instruct the jury, that there is no evidence of a contract to deliver five hundred barrels of flour on the 5th, and five hundred on the 15th of May, as charged in the declaration. Which instruction THE COURT (THRUSTON, Circuit Judge, contra) also refused to give. CRANCH, Chief Judge, concurred in this refusal; his opinion in respect to the statute of frauds having been overruled by THE COURT, as aforesaid.

To these refusals of the court to instruct the jury, as prayed by the defendant's counsel, and to the instructions given at the prayer of the plaintiff's counsel, the defendant took a bill of exceptions. The jury found a verdict, in favor of the plaintiff, $681.25. The defendant took a bill of exceptions, and, it is understood, applied to one of the justices of the supreme court for a writ of error, (which he could not have, as a matter of right, because the verdict was for less that $1,000,) but the justice refused to award it.

---

DODGE (WOOLSEY v.). See Case No. 18,032.

DODGE & S. MANUF'G CO. (KIRBY v.). See Case No. 7,838.

DODGE & S. MANUF'G CO. (MARSH v.). See Case No. 9,115.

DODGE COUNTY (CHANDLER v.). See Case No. 2,592.

DODGE HEALY. The (CLARKE v.). See Case No. 2,849.

---

## Case No. 3,957.

### In re DOE.

[2 N. B. R. 308 (Quarto, 100);[1] 1 Chi. Leg. News, 123.]

District Court, S. D. New York. Dec. 22, 1868.

BANKRUPTCY—ELECTION OF ASSIGNEE—SOLICITATION OF VOTES BY STRANGER.

The court will not sanction the practice of soliciting the votes of creditors by one seeking thereby to be chosen assignee, especially when such person is a stranger to the creditors, and makes it a regular business to seek out creditors and persuade them to prove their debts and vote for him as assignee.

[Cited in Re Mallory, Case No. 8,990; Re Wetmore, Id. 17,466.]

[In bankruptcy. In the matter of John Doe.]